Opinion issued December 23, 2021



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-21-00390-CV

_____

## IN THE INTEREST OF B.H., a child

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-01404J**

---

## MEMORANDUM OPINION

This is an appeal of a parental termination. Anthony Moore challenges the legal and factual sufficiency of the evidence supporting termination of his parental rights under the three predicates found by the trial court: Subsections (E) (endangering conduct), (L) (death or serious injury to a child), and (M) (previous termination of parental rights as to another child for endangering environment or

conduct). *See* TEX. FAM. CODE §§ 161.001(b)(1)(E), (L) & (M). Moore does not challenge the sufficiency of the evidence supporting the trial court's finding that termination is in B.H.'s best interest. *See id.* at (b)(2).

We affirm.

## Background

The child, B.H., who we will call Brooklyn, was born in the summer of 2020. At the time, Anthony Moore was in jail pending trial for aggravated assault of Brooklyn's mother while she was pregnant with Brooklyn. Moore remained in jail as the Department of Family and Protective Services became involved in Brooklyn's life. When Brooklyn was born, she tested positive for cocaine, and the Department sought and received temporary conservatorship over her. Brooklyn was immediately placed with alternative caregivers.

At first, Brooklyn lived with a person her mother had identified, but, within a few short weeks, that person returned Brooklyn to the Department. Brooklyn's second and final placement was with an adoptive foster parent who was caring for Brooklyn's older sister "Stella" after her 2019 removal from these same parents' care.

Brooklyn remained with the adoptive foster parent and her sister. Moore remained in jail. After several months, the trial date to determine Moore's parental rights to Stella arrived. The jury received documentary and testimonial evidence

and, at the end of that trial, returned a verdict to terminate Moore's parental rights to Stella, having determined by clear and convincing evidence that Moore had "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child" and that termination was in Stella's best interest.[1] Moore appealed the judgment, and this Court affirmed. *See In re S.F.M.*, No. 01-21-00334-CV, 2021 WL 5773867 (Tex. App.—Houston [1st Dist.] Dec. 7, 2021, no pet. h.) (mem. op.).

Moore remained in jail as the trial date to determine his parental rights to Brooklyn approached. Brooklyn, meanwhile, continued to live with the adoptive foster parent and Stella.

In the summer of 2021, the trial court held a bench trial on the Department's petition to terminate Moore's parental rights to Brooklyn. The Department caseworker testified that Brooklyn had never been under the care of either parent, having spent all her life with alternative caregivers. In fact, Moore had never met Brooklyn. He was in jail when she was born and remained there through trial.

The Department admitted into evidence the decree of termination that terminated Moore's parental rights to Stella under Subsection (E) for endangering conduct. The Department also admitted evidence of 17 criminal convictions in Moore's past, including multiple convictions for assault. And the Department's

---

[1] The mother's parental rights were also terminated. She did not appeal.

witnesses testified that Brooklyn was healthy and happy—in fact, "thriving"—in her current placement.

Both the Department caseworker and the guardian ad litem recommended Moore's parental rights be terminated because his violent history endangered Brooklyn and because his parental rights to Stella had been terminated based on endangering conduct. They agreed that termination was in Brooklyn's best interest. *See In re S.F.M.*, 2021 WL 5773867.

At the end of the bench trial, the trial court terminated Moore's parental rights under three predicates, including Subsection (M), which allows for the termination of parental rights when a parent has "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)" within a certain time constraint and termination is in the best interest of the child. TEX. FAM. CODE §§ 161.001(b)(1)(M) (predicate for termination); 161.001(d–1) (sets one-year limit on use of Subsection (M) as basis for termination); 161.001(b)(2) (requires finding that termination is in child's best interest).

Moore appealed.

**Termination under Subsection (M)**

In three issues, Moore challenges the various grounds for termination. We will begin with his third issue, challenging termination under Subsection (M), because it is dispositive.

**A.     Standard of review**

A parent's rights to the "companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). A termination decree is final, irrevocable, and permanently divests the parent of all legal rights, privileges, duties, and powers as to the parent-child relationship, except for the child's right to inherit. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in the parent's favor. *Id.* But the "rights of natural parents are not absolute" and the "rights of parenthood are accorded only to those fit to accept the accompanying responsibilities." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). Recognizing that parents may forfeit their parental rights by their acts or omissions, the primary focus of any termination suit is protection of the child's best interest. *See id.*

Because of the severity and permanency of the termination of parental rights, the evidence supporting termination must meet the threshold of clear and

convincing evidence. TEX. FAM. CODE § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. This is an intermediate standard that falls between "preponderance of the evidence" used in ordinary civil proceedings and "reasonable doubt" used in criminal proceedings. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam).

This heightened burden of proof results in a heightened standard of review. *In re S.R.*, 452 S.W.3d 351, 358 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). When the legal sufficiency of the evidence supporting termination is challenged, the reviewing court reviews the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). The court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* at 344. It should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. *In re J.F.C.*, 96 S.W.3d at 266. If, after conducting a legal sufficiency review of the record evidence, the court determines that no reasonable factfinder could have formed a firm belief or conviction that the

matter to be proved was true, the court must conclude that the evidence on that matter is legally insufficient. *Id.*

Only when the factual sufficiency of the evidence is challenged does the reviewing court review disputed or conflicting evidence. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam). The factfinder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109. We are not to "second-guess the trial court's resolution of a factual dispute by relying on evidence that is either disputed, or that the court could easily have rejected as not credible." *In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003). The court should "explain in its opinion 'why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding.'" *In re J.O.A.*, 283 S.W.3d at 345.

A single predicate finding under Section 161.001(b)(1) of the Family Code supports a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d at 362. Thus, if multiple predicate grounds are found by the trial court, we may affirm on any one ground

7

because only one is necessary for termination of parental rights. *See In re T.G.R.-M.*, 404 S.W.3d 7, 13 (Tex. App.—Houston [1st Dist.] 2013, no pet.). But when termination is granted under Subsection (D) or (E), we must review those grounds because they can supply the predicate for future terminations under Subsection (M). *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (holding that allowing (D) and (E) findings to go unreviewed on appeal when parent has presented issue to appellate court violates parent's due-process and due-course-of-law rights).

## B.     Analysis

Termination under Subsection (M) may be ordered when the trial court finds by clear and convincing evidence that a parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E)." TEX. FAM. CODE § 161.001(b)(1)(M). Moore contends the trial court's judgment terminating his rights to Stella should not supply the grounds for terminating his rights to Brooklyn because the earlier case in still in the appellate process. According to Moore, it is premature to allow that termination to prompt this one because it could be reversed on appeal.

We have already concluded in a separate appeal that there was legally and factually sufficient evidence to support the termination of Moore's parental rights

to Stella under Subsection (E) for endangering conduct. *See In re S.F.M.*, 2021 WL 5773867. That termination decree was admitted into evidence in this trial and is in the appellate record.

We conclude the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(b)(1)(M) that Moore's parental rights to another child were terminated under Subsection (E). *See In Interest of A.F.G.*, No. 14-17-00440-CV, 2017 WL 5506026, at *6 (Tex. App.—Houston [14th Dist.] Nov. 16, 2017, pet. denied) (mem. op.). Concluding that the evidence is legally and factually sufficient to support the trial court's finding of endangerment under Subsection 161.001(b)(1)(M) of the Texas Family Code, we need not discuss Moore's challenges to the court's findings under Subsection 161.001(b)(1)(L). *See In re A.V.*, 113 S.W.3d at 362.

Because the Legislature recently added a time limit for using Subsections (D) and (E) to permit a termination under Subsection (M), it is theoretically possible that an affirmance of termination under Subsection (E) in this case could extend the availability of a future Subsection (M) termination should the Department move to terminate Moore's parental rights to any other children in the near future. Thus, in our view, the Subsection (E) basis must be analyzed in this appeal even though another Subsection (E) termination exists in Moore's past. *See In re N.G.*, 577 S.W.3d at 237 (requiring review of Subsection (D) and (E) bases

for termination); *see also* TEX. FAM. CODE § 161.001(d-1) (limiting length of time a Subsection (D) or (E) termination can support a subsequent Subsection (M) termination). We therefore turn to Subsection (E).

## Termination under Subsection (E)

**A.    Applicable Law**

Section 161.001(b)(1)(E) of the Family Code provides that parental rights may be terminated if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). Within the context of Subsection (E), endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Tex. Dep't of Hum. Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). To "endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *Id.*; *see In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996).

It is unnecessary to establish that a parent intended to endanger a child to support termination under Subsection (E). *See In re M.C.*, 917 S.W.2d at 270. Nor is it necessary to establish that the parent's conduct was directed at the child or caused actual harm; it is sufficient if the parent's conduct endangers the child's well-being. *See Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608,

617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The endangering conduct does not have to occur in the child's presence. *Id.* The conduct may occur before the child's birth and either before or after the child's removal by the Department. *Id.* Offenses before the child's birth can be considered as part of a voluntary, deliberate, and conscious course of conduct that endangers the child. *Id.* Mere imprisonment for past offenses will not, standing alone, constitute engaging in conduct that endangers the physical or emotional well-being of a child, but when all the evidence, including the imprisonment, shows a course of conduct that endangers the physical or emotional well-being of the child, a finding under Subsection (E) is supported. *Id.*

A parent's past endangering conduct may create an inference that the past conduct may recur and further jeopardize the child's present or future physical or emotional well-being. *See In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

**B.    Analysis**

The trial court received evidence that Moore had a long history of violent behavior. He had 17 past convictions, including several assaults, possession of a

firearm as a felon, and reckless injury to a child. He had been convicted of assaulting family members more than once. He was in jail at the time of trial for assaulting Brooklyn's mother while she was pregnant with Brooklyn. And he had two additional, unrelated charges pending. One was for making a terroristic threat when he threatened to shoot his attorney. The other was for harassment of a public servant when he spit on a person engaged in official duties.

Moore has a documented history of uncontrolled anger leading to violence against those in his family. He has attacked the mother of his child more than once. Evidence of how a parent has treated another child or spouse is relevant to whether a course of conduct under Subsection (E) has been established. *Jordan v. Dossey*, 325 S.W.3d 700, 724 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). And evidence that a person has engaged in abusive conduct in the past permits an inference that the person will continue violent behavior in the future. *Id.*

Even with a case pending in which the Department sought to terminate his parental rights, Moore threatened to shoot his attorney and he spit on a public servant. Moore's documented history of abusive and violent behavior provides clear and convincing evidence from which the trial court could have formed a firm conviction or belief that Moore has engaged in conduct that endangers Brooklyn's physical or emotional well-being. *See In re M.D.M.*, 579 S.W.3d 744, 765 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (abusive and violent criminal conduct by

parent can produce endangering environment). We affirm the termination under Subsection (E) as well.

Because Moore did not challenge the trial court's best-interest finding under Section 161.001(b)(2), the sufficiency of the evidence supporting that finding is not before us.

## Conclusion

We affirm.

Sarah Beth Landau
Justice

Panel consists of Chief Justice Radack and Justices Kelly and Landau.